## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ROBERT M. LOWEN, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) **CASE NO.: 1:20-cv-11305** ) |
| RESTORBIO, INC., JEFFREY A. CHODAKEWITZ, PAUL FONTEYNE, MICHAEL GRISSINGER, CHEN SCHOR, JONATHAN SILVERSTEIN, DAVID STEINBERG, and LYNNE SULLIVAN, | ) **COMPLAINT FOR VIOLATION** ) **OF FEDERAL SECURITIES** ) **LAWS** ) ) ) |
| Defendants. | ) ) ) |

Plaintiff Dr. Robert M. Lowen ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

### NATURE AND SUMMARY OF THE ACTION

1.      Plaintiff, a stockholder of resTORbio, Inc. ("resTORbio" or the "Company") brings this action against the members of resTORbio's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to merge the Company with Adicet Bio, Inc. ("Adicet" or "Parent") and Project Oasis Merger Sub, Inc. ("Merger Sub" and together with Parent, "Adicet").

2.      On April 28, 2020, the Company announced that it had entered into a definitive agreement and plan of merger ("Merger Agreement"), by which the Company will merge with and

into Merger Sub, with Adicet surviving as a wholly-owned subsidiary of resTORbio (the "Proposed Transaction"). Under the terms of the Merger Agreement, each share of Adicet capital stock will be converted into 0.8559 shares of resTORbio common stock (the "Merger Consideration"). Upon closing of the Proposed Transaction, stockholders of Adicet are expected to own approximately 75% of the outstanding common stock of resTORbio, while stockholders of resTORbio are expected to own approximately 25%.

3.      On June 23, 2020, the Company filed an S-4 Registration Statement (the "Registration Statement") with the United States Securities & Exchange Commission ("SEC"). The Registration Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding: (i) the conflicts of interest of the Company's financial advisor JMP Securities LLC ("JMP"); (ii) the Company's financial projections; and (iii) the background of the transaction. Without additional information the Registration Statement is materially misleading in violation of federal securities laws.

4.      By unanimously approving the Proposed Transaction and authorizing the issuance of the Registration Statement, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Registration Statement was materially false and/or misleading. The Registration Statement is an essential link in soliciting, and receiving, stockholder approval for the Proposed Transaction.

5.      The stockholder vote (the "Stockholder Vote") on the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated. Accordingly, the time for judicial intervention is now.

6.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed

Transaction unless and until the material information discussed below is disclosed to the holders of resTORbio common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the conduct at issue had an effect in this District, as the Company is headquartered in this district.

## PARTIES AND RELEVANT NON-PARTIES

10.      Plaintiff is, and has been at all relevant times, the owner of resTORbio common stock.

11.      Defendant resTORbio is a clinical-stage biopharmaceutical company developing innovative medicines that target the biology of aging to prevent or treat age-related diseases with the potential to extend healthy lifespan. The Company is a Delaware corporation and maintains its principal executive offices at 500 Boylston Street, 13th Floor Boston, Massachusetts 02116. resTORbio's common stock is traded on the NASDAQ under the ticker symbol "TORC."

12.      Defendant Chen Schor is Chief Executive Officer, Co-Founder, and a director of the Company.

13.     Defendant Jonathan Silverstein is a director of the Company. In addition to his role as a director of resTORbio, Mr, Silverstein was a partner in OrbiMed, a healthcare investment firm that held an equity position in Adicet.

14.     Defendant Jeffrey A. Chodakewitz is a director of the Company.

15.     Defendant Paul Fonteyne is a director of the Company.

16.     Defendant Michael Grissinger is a director of the Company.

17.     Defendant David Steinberg is a director of the Company.

18.     Defendant Lynne Sullivan is a director of the Company.

19.     Defendants referenced in ¶¶ 12 through 18 are collectively referred to as Individual Defendants and/or the Board.

## FURTHER SUBSTANTIVE ALLEGATIONS

20.     Between April 2019 and December 2019, resTORbio's management team, with the assistance of a financial advisor, held discussions with potentially interested companies regarding resTORbio. Ultimately, no definitive proposals were received that the resTORbio Board believed would enhance stockholder value, and the financial advisor's engagement was terminated.

21.     Following the termination of the previous financial advisor in December 2019, that same month, resTORbio management discussed with representatives of JMP resTORbio's situation and prospects and the possibility of JMP acting as its financial advisor in evaluating strategic alternatives that might be available to resTORbio.[1] Later that same month, on December 31, 2019, resTORbio's Chief Executive Officer, Chen Schor, had a discussion with a

---

[1] resTORbio engaged JMP in February 2020, pursuant to an engagement letter dated February 7, 2020, to assist the resTORbio Board in exploring and evaluating a broad range of strategic and financial alternatives to enhance stockholder value, including a possible reverse merger or strategic merger, as well as resTORbio's business and prospects as a standalone company.

representative of OrbiMed, a healthcare investment firm,[2] to identify leads for pre-clinical or clinical assets or companies that could be of interest to resTORbio as potential licensing or merger candidates. One of the opportunities that were discussed in this conversation concerned Adicet.

22.     On January 7, 2020, Mr. Schor had a discussion with an Adicet director regarding Adicet's technology, pre-clinical pipeline and capabilities and resTORbio's assets and capabilities. No proposals were made during this discussion. Following these discussions, on January 10, 2020, resTORbio and Adicet entered into a mutual confidentiality agreement that did not include a standstill provision.

23.     On January 22, 2020, the resTORbio Board held a meeting with Company management to discuss additional strategic alternatives that might be available to resTORbio, including a possible strategic merger or reverse merger with another company. During this meeting, the resTORbio Board established an advisory transaction committee (referred to as the "Transaction Committee") to assist the resTORbio Board in exploring potential strategic alternatives, including a possible business combination transaction. Jeffrey Chodakewitz, Paul Fonteyne, and Michael Grissinger were appointed to the Transaction Committee.

24.     On January 23, 2020, resTORbio was provided access to an online data room containing nonpublic information regarding Adicet. The following day, the Transaction Committee held a meeting with members of resTORbio management and received an update on discussions with Adicet and a second company, Company A.

25.     Between January 29 and February 8, 2020, members of resTORbio management had discussions with representatives of Company A regarding proposed terms for a possible

---

[2] While the Registration Statement notes that this representative "was not a resTORbio director," it is unclear if Mr. Silverstein, who was both a resTORbio director and a partner in OrbiMed, played a roll in facilitating this discussion or participated in these discussions in any way.

merger transaction between the companies. During these discussions, representatives of Company A indicated to resTORbio management that Company A was interested in pursuing a merger transaction with resTORbio that provided for, among other things, a 51% and 49% ownership split for resTORbio and Company A equityholders in the post-closing company, which was reflected in a term sheet exchanged between the companies on February 8, 2020.

26.    In early February, JMP and resTORbio management developed a list of potential merger candidates based on criteria developed in consultation with the Transaction Committee. From an initial universe of over 300 companies, the list was narrowed to 52 potential merger candidates, including Company A, Adicet, and a publicly listed biopharmaceutical company (referred to as "Company B"). On February 10, 2020, representatives of JMP began their initial outreach to these 52 companies, and invited these companies to express an interest in a strategic transaction with resTORbio

27.    On February 11, 2020, resTORbio entered into a mutual confidentiality agreement that did not include a standstill provision with Company B as a potential merger candidate.

28.    On February 18, 2020, the Transaction Committee held a meeting with members of resTORbio management and representatives of JMP present. Mr. Schor and representatives of JMP provided an update on the strategic process and the discussions to date with interested parties and their perceived level of interest. Following the meeting, the Transaction Committee directed management to publicly announce that resTORbio would be exploring strategic alternatives in conjunction with the public announcement of interim results for Phase 1b/2a trial of RTB101 in Parkinson's disease. The Transaction Committee also authorized management and its advisors to continue discussions with Company A, Company B and Adicet and to have discussions with other potentially interested parties.

29.     Following the public announcement that resTORbio was initiating a process to evaluate strategic alternatives to maximize stockholder value and that it had engaged JMP to act as a strategic advisor for this process, an additional 28 companies contacted resTORbio and JMP concerning a strategic transaction. Including Company A, Company B and Adicet, at that time, a total of 80 companies were in contact with resTORbio. Twenty-three of these companies executed a mutual confidentiality agreement with resTORbio. Five of the mutual confidentiality agreements, including those executed by Company A, Company B, a private biopharmaceutical company (referred to as "Company C"). and Adicet, did not include any standstill provisions. Eighteen of the mutual confidentiality agreements, including one executed by a private biopharmaceutical company (referred to as "Company D"), included standstill obligations that automatically terminated upon resTORbio's announcement of the execution of a definitive agreement with a third party to effect a change of control of resTORbio.

30.     Beginning on February 12, 2020, representatives of JMP sent 22 of the 23 companies that executed a mutual confidentiality agreement, including Company A and Company B, a process letter setting forth a deadline of March 4, 2020 for the submission of non-binding written proposals.

31.     By March 4, 2020, of the 23 companies that had entered into a mutual confidentiality agreement with resTORbio, 15 companies (including Company A, Company B and Adicet) submitted or discussed non-binding proposals or term sheets for a strategic merger or reverse merger with resTORbio. By March 13, 2020, resTORbio management conducted preliminary scientific, clinical and business diligence on, and had management meetings with, 12 of the 15 companies (including Company A, Company B and Adicet). Later that same day the resTORbio Board held a meeting to review the proposals and, based on the discussions at this

meeting and the criteria discussed at the previous resTORbio Board and Transaction Committee meetings, the resTORbio Board narrowed the selection of possible merger partners to five companies—Company A, Company B, Company C, Company D, and Adicet. Following the meeting, the resTORbio Board directed representatives of JMP to contact the five selected companies regarding the next steps of the strategic process.

32.     From March 2 through March 13, 2020, representatives of resTORbio's legal counsel discussed with each of the resTORbio directors their fiduciary duties in connection with resTORbio potentially effecting a change of control via a merger with another company, including whether any director had any relationship with any of the merger candidates. It was at this time that Mr. Silverstein, a partner in OrbiMed, disclosed that OrbiMed had an equity position in Adicet. Following this disclosure, Mr. Silverstein recused himself from discussions regarding the strategic process and was not present at any resTORbio Board meetings until the April 28, 2020 resTORbio Board meeting approving the merger. Also around this time, Mr. Grissinger disclosed that he had a material relationship with Company B.

33.     On March 16, 2020, Adicet submitted a preliminary non-binding written proposal that contained substantially the same terms as the preliminary summary of terms. The Adicet proposal provided for, among other things, a 72.1% and 27.9% ownership split for Adicet and resTORbio equity-holders in the post-closing company. Adicet's proposal indicated an assumed $85 million valuation of resTORbio and an assumed $220 million valuation of Adicet. Finally, the proposal also indicated that the resTORbio personnel that would be selected to remain with the post-closing company would be determined by resTORbio and Adicet prior to execution of the Merger Agreement.

34.     On March 24, 2020, the Transaction Committee held a meeting with members of resTORbio management and representatives of JMP present. During this meeting, Mr. Schor and representatives of JMP provided an update on the strategic process and the discussions with the five companies remaining in the strategic process. The Transaction Committee authorized JMP to inform Company C that it would no longer be involved in the strategic process, and to defer on providing such notification to Company D. Also during this meeting, Schor provided an update regarding his discussion with an Adicet director regarding the potential roles of certain resTORbio executives, including Mr. Schor, on the executive management team of the post-closing company. In light of this conflict of interest, the resTORbio Board determined that Dr. Chodakewitz should take the lead and represent resTORbio in any discussions with merger candidates regarding Mr. Schor's potential role following the closing of a transaction and that Mr. Schor should not have any discussion regarding is post-closing employment terms with any merger candidates until negotiation of all material terms of a transaction were complete.

35.     On March 25, 2020, Company B submitted a non-binding written proposal for a merger transaction with resTORbio. Company B's proposal provided for a 58% and 42% ownership split for resTORbio and Company B stockholders in the post-closing company, assuming a resTORbio net cash balance of $68 million. The Company B proposal provided that the resTORbio stockholders' ownership split would be subject to a downward adjustment if the Company's net cash balance was below an agreed upon level at the time of closing. The Company B proposal provided that prior to execution of the Merger Agreement, the parties would discuss the terms of retention of key roles in senior management, including Mr. Schor as chief executive officer of the post-closing company. Also on March 25, 2020, as authorized by the Transaction Committee, representatives of JMP informed Company C that resTORbio had determined not to

pursue a strategic transaction with Company C and that it would no longer be involved in resTORbio's strategic process.

36.     On March 26, 2020, Dr. Chodakewitz corresponded with an Adicet director regarding Mr. Schor's potential role with the post-closing company as well as the potential roles of other resTORbio executives on the executive management team of the post-closing company.

37.     On March 26, 2020, Company A submitted a revised non-binding term sheet for a merger transaction with resTORbio. Company A's term sheet provided for a 52.5% and 47.5% ownership split for resTORbio and Company A in the post-closing company, assuming a resTORbio net cash balance of $65 million. Company A's term sheet also provided that Mr. Schor would be the chief executive of the post-closing company. On March 31, 2020, the resTORbio Board met to discuss, among other things, the three merger proposals that had been submitted. Members of resTORbio management and representatives of JMP were present. During this meeting resTORbio's legal counsel Goodwin Proctor LLP ("Goodwin") discussed with the resTORbio Board the disclosure that JMP provided regarding its relationships with Company A, Company B and Adicet.[3] During this meeting, the resTORbio Board discussed that each of the three proposals contemplated roles for Mr. Schor and other resTORbio executives following the closing, and that Dr. Chodakewitz had taken the lead in these discussions with Adicet. Following a review of the three proposals, the resTORbio Board determined that JMP should inform Adicet that it was selected to enter into a reverse merger transaction with resTORbio provided that the parties could reach agreement on certain key provisions in Adicet's revised draft of the Merger Agreement, including that current investors in Adicet would commit to providing additional funding to the post-closing company and that resTORbio would be able to commence and continue

---

[3] The JMP disclosure indicated that JMP did not have any relationships with any of the companies.

the RTB101 COVID-19 studies following the execution of the Merger Agreement. In light of this decision, the resTORbio Board also determined that JMP would inform Company A, Company B and Company D that the Board had selected another party for a strategic transaction.

38.     On April 1, 2020, as directed by the resTORbio Board, JMP had discussions with each of Company A, Company B and Company D, and informed them that resTORbio had selected another company with which to pursue a strategic transaction and that they would no longer be involved in resTORbio's strategic process.

39.     From April 3 through 28, 2020, representatives of resTORbio, JMP, Goodwin, Adicet and Adicet's outside counsel, Morrison & Foerster LLP (referred to as "Morrison & Foerster"), had various telephonic meetings to finalize the confirmatory due diligence of the parties and discuss open points in the Merger Agreement and related documents.

40.     From April 5 through 28, 2020, representatives of Goodwin, Adicet's representatives and Morrison & Foerster exchanged drafts and participated in discussions regarding the terms of the Merger Agreement and related documents.

41.     From April 7 through 23, 2020, as authorized by the Transaction Committee, Dr. Chodakewitz had discussions with representatives of Adicet regarding Mr. Schor's potential role as chief executive officer of the post-closing company, as well as the composition of the executive management team of the post-closing company. Mr. Schor participated in certain of these discussions.

42.     On April 28, 2020, the Transaction Committee held a meeting with members of resTORbio management and representatives of JMP and Goodwin present. Mr. Schor and representatives of JMP provided an update on the recent discussions with Adicet on the Merger

Agreement. Representatives of Goodwin reported that the Merger Agreement and related documents were near final and ready for consideration by the resTORbio Board.

43.    Also on April 28, 2020, the resTORbio Board held a meeting to discuss the terms of the proposed transaction with Adicet. Representatives of JMP and Goodwin discussed with the resTORbio Board that the exchange ratio in the Merger Agreementwhich provided for a 75% and 25% ownership split for the Adicet and resTORbio equityholders in the post-closing company, was based on an assumed $73.3 million valuation of resTORbio and an assumed $220 million valuation for Adicet. Representatives of JMP and Goodwin also discussed with the resTORbio Board that at closing the resTORbio stockholders of record would be issued a CVR regarding the net proceeds from the commercialization of RTB101 as a prophylaxis for COVID-19 pursuant to the CVR agreement to be executed at closing. Following these discussions, representatives of JMP rendered the oral opinion of JMP to the resTORbio Board that the exchange ratio was fair, from a financial point of view, to the holders of resTORbio common stock. Following these discussion, and after receiving the Transaction Committee's favorable recommendation of the merger, the resTORbio Board determined unanimously by those directors voting that the Merger Agreementand the transactions contemplated by the Merger Agreementwere fair to, and in the best interests of, resTORbio and its stockholders, approved and declared advisable the Merger Agreementand the transactions contemplated by the Merger Agreement, authorized management to execute the Merger Agreementon behalf of resTORbio, and resolved to recommend that the resTORbio stockholders vote to approve the issuance of the shares of resTORbio common stock in connection with the merger. Later that same day, the parties finalized and executed the Merger Agreement, the voting agreements and the lock-up agreements.

44.     On the morning of April 29, 2020, prior to the opening of trading on the NASDAQ market, resTORbio and Adicet issued a joint press release (the "Press Release") announcing their entry into the Merger Agreement and made available an investor presentation regarding the Proposed Transaction. The Press Release read in relevant part:

> BOSTON and MENLO PARK, Calif., April 29, 2020 (GLOBE NEWSWIRE) -- resTORbio, Inc. (Nasdaq: TORC) and Adicet Bio, Inc., a privately-held biopharmaceutical company, today announced that they have entered into a definitive merger agreement to create a combined publicly-traded biotechnology company focused on the development of Adicet's off-the-shelf allogeneic gamma delta T cell therapies for oncology and other indications. Adicet's lead candidate, ADI-001, is a gamma delta CAR-T cell therapy targeting CD20 being developed for non-Hodgkin's lymphoma. Adicet has a pipeline of differentiated pre-clinical and discovery programs leveraging its universal, off-the-shelf gamma delta CAR-T cell platform.
>
> Under the terms of the agreement, Adicet would merge with a wholly-owned subsidiary of resTORbio in an all-stock transaction, and the equityholders of Adicet will become the majority owners (75%) of resTORbio's outstanding common stock upon the close of the merger.
>
> "After a thorough evaluation of strategic alternatives, the Board of Directors of resTORbio believes that this merger represents the highest-potential value creation opportunity for resTORbio stockholders," commented Chen Schor, Co-Founder, President and Chief Executive Officer of resTORbio, Inc. "The combined company will leverage Adicet's scientific and product development expertise and pipeline of engineered immune cell therapeutics for cancer based on its proprietary gamma delta T cell therapy platform. We believe this transformative transaction will provide the resources for the combined company to advance multiple programs into the clinic, including Adicet's lead candidate, ADI-001, a gamma delta CAR-T cell therapy targeting CD20, and expand the pipeline in oncology and other indications."
>
> "Adicet believes that its novel and highly productive efforts to date have generated a compelling allogeneic cell therapy platform that overcomes key challenges faced by existing CAR-T therapy," said Anil Singhal, Ph.D. President and Chief Executive Officer of Adicet Bio, Inc. "The proposed merger with resTORbio is the right next step in our trajectory, and we expect that it will provide Adicet with the resources to rapidly accelerate the development of its unique product candidates based on this platform and leverage our cGMP manufacturing process to create best-in-class therapies for patients in need."

Adicet completed an $80 million Series B financing in October 2019 and was backed by OrbiMed Advisors, aMoon2 Fund, Novartis Venture Fund, Regeneron Pharmaceuticals, Inc., Johnson & Johnson Innovation – JJDC, Inc. (JJDC), OCI Enterprises, Inc, KB Investment Co., Ltd., Consensus Business Group, SBI JI Innovation Fund, Samsung Venture Investment Corporation, Handok, Inc., DSC Investment, Inc. and Pontifax.

In August 2016, Adicet entered into a strategic collaboration with Regeneron focused on developing next-generation engineered immune cell therapeutics using Adicet's gamma delta T cell allogeneic platform technology.

In addition to its gamma delta T cell therapy platform, Adicet also identifies and validates cancer specific targets derived from the intracellular proteome and then generates T cell receptor-like monoclonal antibodies (TCRLs) directed to these cancer-specific peptide targets presented by major histocompatibility complex (MHC) Class I complexes. These TCRLs are designed to arm CAR-modified T cells or as T cell engaging antibodies that target solid tumors.

**About the Proposed Merger**

Under the terms of the merger agreement, stockholders of Adicet will receive shares of newly issued resTORbio common stock. On a pro forma basis, Adicet equityholders are expected to own approximately 75% of the combined company and current resTORbio equityholders are expected to own approximately 25% of the combined company. The parties anticipate that the combined company's primary focus will be to advance Adicet's unique cell therapy platform. The parties anticipate that the combined company will continue the development of RTB101, resTORbio's small molecule product candidate that is a potent inhibitor of target of rapamycin complex 1 (TORC1), for a COVID-19 related indication, with clinical data expected by Q1 2021. The terms of the merger agreement contemplate that a contingent value right (a "CVR") will be distributed to resTORbio stockholders as of immediately prior to the effective time of the merger, entitling CVR holders to receive net proceeds from the commercialization, if any, received from a third party commercial partner of the product candidate RTB101. The terms and conditions of the CVRs will be pursuant to a CVR Agreement resTORbio will enter into prior to the closing of the merger (the "CVR Agreement").

Following the merger, the combined company will leverage expertise from both companies with Chen Schor to serve as President and Chief Executive Officer, Stewart Abbot, Ph.D., as Senior Vice President and Chief Operating and Scientific Officer, Francesco Galimi, M.D., Ph.D., as Senior Vice President and Chief Medical Officer, Lloyd Klickstein, M.D., Ph.D., as Chief Innovation Officer, Carrie Krehlik, as Senior Vice President and Chief Human Resource Officer and Joan Mannick, M.D., as Head of Infectious Diseases to oversee the clinical program conducted under the CVR. At closing, the combined board of

directors is anticipated to consist of seven members, which will include five designated from Adicet, one designated from resTORbio and Chen Schor, President and Chief Executive Officer. Anil Singhal will serve as an advisor to the board of directors. The company will maintain offices in Menlo Park, CA and Boston, MA.

"On behalf of the Adicet Board, we thank Anil for his service to Adicet and welcome his contributions as an advisor to the Board of Directors," said Carl Gordon, Ph.D., member of Adicet's Board of Directors.

The transaction is expected to close in the second half of 2020, subject to approvals of each company's stockholders and other customary closing conditions. Upon completion of the merger, the combined company will operate under the name Adicet Bio and is expected to trade on the Nasdaq Global Market under a new ticker symbol to be determined.

JMP Securities LLC is acting as financial advisor to resTORbio and Goodwin Procter LLP is serving as legal counsel to resTORbio. Morrison & Foerster LLP is serving as legal counsel to Adicet Bio.

**The Registration Statement Misleads resTORbio Stockholders by Omitting Material Information**

45.     On June 23, 2020, the Company filed the materially misleading and incomplete Registration Statement with the SEC.  Designed to convince resTORbio stockholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the financial projections of the Company, the financial analyses conducted by JMP, and the terms of confidentiality agreements entered into with other potential bidders for the Company.

### *The Background of the Transaction*

46.     The Registration Statement describes the process leading up to the execution of the Merger Agreement. However, the description of this process is incomplete. Between April 2019 and December 2019, resTORbio conducted a long strategic review process with the assistance of a different financial advisor. While the Registration Statement notes that "no definitive proposals were received that the resTORbio Board believed would enhance stockholder value, and the

financial advisor's engagement was terminated[,]" this description of the prior sales process fails to detail the terms and values of the proposals received by the Board, and the identity of this other financial advisor.

47.     Almost immediately after this prior sale process was terminated, on December 31, 2019, resTORbio's Chief Executive Officer, Chen Schor, had a discussion with a representative of OrbiMed to identify leads for pre-clinical or clinical assets or companies that could be of interest to resTORbio as potential licensing or merger candidates. OrbiMed was not only invested in Adicet, but also had a presence on the resTORbio board, as Jonathan Silverstein was not only a director of the Company but also was a partner in OrbiMed.

48.     Here, given the abrupt termination of the prior sale process, and apparent conflicts that may have led to the immediate resumption of a sale process geared towards a strategic transaction with Adicet, resTORbio stockholders require additional information concerning the prior sale process, the identity of the financial advisor that assisted with this process, the terms and values of the proposals received by the Board, and details as to whether any of the potential counterparties executed a confidentiality agreement containing standstill provisions that limited their ability to participate in the 2020 sale process. This omitted information, if disclosed, would significantly alter the total mix of information available to resTORbio stockholders.

49.     Furthermore, the omission of material information in the Background section of the Registration is not limited to just the process that was undertaken between April 2019 and December 2019, but also concerns the 2020 sale process. Specifically, the Registration Statement only partially discloses whether the Company entered into confidentiality agreements with other bidders, such as with Company D, and if so, whether they contained standstill provisions. The failure to fully disclose the existence of standstill provisions in confidentiality agreements creates

the false impression that any company could have made a superior proposal. If there are confidentiality agreements containing undisclosed standstill provisions, then those parties could only make a superior proposal by breaching the agreement. Any reasonable stockholder would deem the fact that likely bidders in the marketplace may have been precluded from making a superior offer to significantly alter the total mix of information.

50.     Finally, the Registration Statement also omits material information concerning the terms and values of all indications of interest, proposals, and or term sheets between resTORbio and potentially interested counterparties during the 2020 sales process leading up to the Proposed Transaction. Specifically, the Registration Statement provides that "[b]y March 4, 2020, of the 23 companies that had entered into a mutual confidentiality agreement with resTORbio, 15 companies (including Company A, Company B and Adicet) submitted or discussed non-binding proposals or term sheets for a strategic merger or reverse merger with resTORbio." Registration Statement at 160. However, the terms and values of all indications of interest, proposals, and or term sheets between resTORbio and potentially interested counterparties during this period are not disclosed in the Registration Statement.

51.     Defendants' failure to provide resTORbio stockholders with the foregoing material information renders the statements in the Background of the Merger section of the Registration Statement false and/or materially misleading.

### *The Company's Financial Projections and the Financial Advisor's Analyses*

52.     The summary of the financial analyses conducted by the Company's financial advisor states that the advisor reviewed certain financial projections provided to JMP by resTORbio relating to resTORbio and Adicet, and certain other historical and current financial and business information provided to JMP by resTORbio and Adicet.

53.     These projections were prepared by Company management and provided to the Board in connection with their evaluation of the Proposed Transaction and the Board approved their use by JMP in connection with its financial analyses. As noted in the Registration Statement, JMP "reviewed certain financial projections provided to JMP by resTORbio relating to resTORbio and Adicet, and certain other historical and current financial and business information provided to JMP by resTORbio and Adicet;." Registration Statement at 177. However, the Registration Statement completely omits the Company's and Adicet's financial projections.

54.     The above-referenced omitted information relating to the Company's financial projections would, if disclosed, significantly alter the total mix of information available to resTORbio's stockholders regarding the future value of the Company.

55.     Thus, the complete omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analysis conducted by JMP, or to perform their own valuation of the Company or Adicet. In short, any analysis of the Company as a standalone entity is made impossible by the complete omission of the Company's financial projections. Without such information, stockholders are left to guess at the actual value of both the Adicet and resTORbio stock which together form the consideration being rendered in the Proposed Transaction.  Defendants' assertions and assumptions concerning the value of such resTORbio stock are thus rendered materially incomplete and misleading as a result.

56.     Furthermore, in addition to the complete omission of financial projections for resTORbio, the Registration Statement completely omits allof JMP's financial analyses concerning resTORbio, thus rendering the Registration Statement materially incomplete and misleading. As noted in the Registration Statement, "[t]he resTORbio Board approved the liquidation plan for use by JMP in conducting its financial analyses of resTORbio," however, none

of these analyses are included in the Registration Statement. Indeed, it appears that even though a discounted cash flow analysis was performed, this analysis is entirely omitted from the Registration Statement. Accordingly, resTORbio stockholders are made to believe that the Company had no value other than its liquidation value despite not providing resTORbio stockholders with any projections or analyses. Stockholders are entitled to this information as a matter of law, when asked to vote on a merger.

57.     With regard to the financial analyses JMP performed on Adicet, the Adicet Selected Company Analysis, fails to include: (i) JMP's assumptions for selecting each of the companies observed; and (ii) the individual metrics for each company observed.

58.     With respect to the Adicet Selected Initial Public Offerings Analysis, the Registration Statement fails to include: (i) JMP's assumptions for selecting each of the companies observed; and (ii) the individual metrics for each company observed.

59.     Finally, with respect to the Adicet Precedent Transaction Analysis, the Registration Statement fails to disclose: (i) JMP's assumptions for selecting each of the transactions observed; and (ii) the inputs for each of the transactions observed.

60.     In particular, Defendants' failure to provide resTORbio stockholders with the foregoing material information renders the statements in the *Opinion of the resTORbio Financial Advisor* section of the Registration Statement materially misleading.

### *Financial Advisors' Conflicts of Interest*

61.     Finally, with regard to the potential conflicts of interest faced by the financial advisors, the Registration Statement fails to adequately disclose the prior relationship that JMP had with both Adicet and resTORbio.

62.     Specifically, the Registration Statement notes that on March 26, 2020, JMP

disclosed to the resTORbio Board only that JMP did not have any relationships with any of the companies that resTORbio was negotiating with during the sale process. This barebones and materially incomplete description omits to disclose whether JMP had any prior relationship with Adicet or resTORbio, including the timing and nature of the past services JMP may have provided to either resTORbio or Adicet, or any of their affiliates, as well as the amount of compensation JMP may have received for providing such services.

63.     This information is material to resTORbio stockholders as a reasonable resTORbio stockholder would find it material and important to their voting decision to evaluate the potential conflicts of interest faced by the financial advisor and understand what factors might influence the financial advisor's analytical efforts that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

64.     Defendants' failure to provide resTORbio stockholders with the foregoing material information renders the statements in the Background of the Merger section of the Registration Statement false and/or materially misleading.

65.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and resTORbio**

66.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material

facts necessary to make the statements therein not materially false or misleading. resTORbio is liable as the issuer of these statements.

68.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

69.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

70.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

71.     The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

72.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

73.     Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

74.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

75.     The Individual Defendants acted as controlling persons of resTORbio within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of resTORbio and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

76.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

77.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

78.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

79.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.

As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.       Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.       In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.       Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.       Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E.       Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.       Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.


Dated: July 10, 2020                                  Respectfully submitted,


**LEVI & KORSINSKY, LLP**                 **LEVI & KORSINSKY, LLP**

Donald J. Enright (to be admitted *pro hac vice*)      By:  /s/ *Sebastiano Tornatore*
Elizabeth K. Tripodi (to be admitted *pro hac vice*)   Shannon L. Hopkins (657485)
1101 30th Street, N.W., Suite 115             Sebastiano Tornatore (686175)
Washington, DC 20007                          1111 Summer Street, Suite 403
Tel: (202) 524-4290                           Stamford, CT 06905

Fax: (212) 363-7171
Email: denright@zlk.com
        etripodi@zlk.com

*Attorneys for Plaintiff*

Tel.: (203) 992-4523
Fax: (212) 363-7171
Email: stornatore@zlk.com
shopkins@zlk.com

*Attorneys for Plaintiff*